FILED

JUL 25 2025

Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (423) 612-8543

Case No. 2:25-MJ-146 SEALED

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Cellular telephone number (423) 612-8543 as further described in Attachment A, which is incorporated by reference.

located in the Eastern District of Tennessee, there is now concealed *(identify the person or describe the property to be seized)*:

Location information as more fully described in Attachment B, which is incorprorated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. 841(a) | Distribution of Controlled Substances |

The application is based on these facts:

Please see attached Affidavit of DEA TFO Brian Vicchio which is incorporated by reference.

☑ Continued on the attached sheet.

☑ Delayed notice of 60 days *(give exact ending date if more than 30 days: (09/22/2025)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Brian Vicchio, DEA TFO
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 07/25/2025

*Judge's signature*

City and state: Greeneville, Tennessee

Cynthia Richardson Wyrick, U.S. Magistrate Judge
*Printed name and title*

FILED
JUL 25 2025
Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(423) 612-8543** | Case No. 2:25-MJ-146<br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Brian Vicchio, Task Force Officer, United States Department of Justice, Drug Enforcement Administration, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. Your Affiant makes this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the location of the cellular telephone assigned call number **(423) 612-8543** (hereinafter referred to as "**Target Cellular Telephone**"), whose service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921. According to Cash App, the **Target Cellular Telephone** is subscribed to "JP JARVIS." Through this investigation, it has been discovered that the **Target Cellular Telephone** is being used by Jon Paul PALOMINO JARVIS. The **Target Cellular Telephone** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information

collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3. I am currently appointed as a Criminal Investigator at the Washington County Sheriff's Office and assigned as a Task Force Officer with the Drug Enforcement Administration. Prior to working at the WCSO, I was assigned to the 1st Judicial Drug Task Force within the Eastern District of Tennessee. Prior to the DTF, I was assigned to the Knoxville, Tennessee, office of the DEA at the Johnson City Post of Duty. I was a Task Force Agent with DEA for five and a half years. Prior to becoming a Task Force Agent with DEA, I worked as a police officer (K-9 Officer) for Johnson City Police Department in Johnson City, Tennessee, for approximately ten years. Prior to working as a Police Officer in Johnson City, Tennessee, I worked as a Police Officer for the City of Bluefield, West Virginia, for six years. I have had experience and training in conducting investigations of criminal activity, including debriefing of confidential sources about criminal activity, conducting surveillance of persons involved in criminal activity, and conducting searches for evidence of criminal activity. Such criminal activity includes trafficking in controlled substances. I have experience in investigations utilizing Court ordered wiretaps. I am familiar with the methods of operation and terminology used by persons involved in illegal drug distribution activities. In the performance of my duties as a Task Force Agent, I have conducted many investigations involving narcotics, drug trafficking, and other general criminal investigations through the past twenty years involving violations of state and federal laws. I have been involved in the detection and investigation of federal narcotic violations, including the sale, distribution, importation, possession, and conspiracy to possess or sell and distribute

various narcotic and controlled substances, and the use of communication facilities, such as telephones, digital telephone pagers, and other like facilities that are commonly used to facilitate narcotic violations. I have received training in narcotic enforcement efforts, case development, procedures, investigative techniques, asset forfeiture investigation, and other standardized methods of investigation involving narcotic offenses from the DEA. I have investigated many violations of the state and federal narcotic statutes during the past fifteen years in the Eastern District of Tennessee, and, as a result, have been successful in arrests and convictions of numerous individuals associated with narcotic distribution. As a result of these investigations and prosecutions, I have become aware of various methods and techniques utilized by individuals within the Eastern District of Tennessee and elsewhere in order to sell and distribute various controlled substances. I have become familiar with various codes, slang terms, and other terminology utilized by individuals within the Eastern District of Tennessee to refer to controlled substances, such as cocaine and cocaine base. I am aware that drug traffickers often "front" drugs or distribute them without receiving immediate payment. I have consistently kept myself abreast of various narcotic violators and have received intelligence regarding narcotics violations from agents of the Tennessee Bureau of Investigation ("TBI") and local law enforcement authorities located in the Northeastern portion of the Eastern District of Tennessee and surrounding states. I have a total of approximately 29 years of law enforcement experience on the state and federal level.

4. Through the training and experience identified above, I have learned that trafficking in illegal drugs is an activity dependent upon communications. Drug traffickers need to stay in regular contact with sources of supply and customers, and as a result often make use of the latest in communications technology, such as cellular telephones. I have also learned that drug

traffickers maintain records of sales, so that they can keep track of money that they owe to sources, and money that is owed to them by customers. These records can be maintained on mobile devices such as cell phones. Finally, I am aware that drug traffickers may utilize information technology to conduct transactions that evidence drug trafficking, either by communicating through a cell phone, or using the cell phone to make travel arrangements, payment arrangements, or purchase assets with the proceeds of drug transactions.

5. I have conducted numerous drug investigations utilizing various investigative techniques. Through these investigations, and my training, and experience, I have become familiar with the methods used by narcotics traffickers to smuggle and safeguard narcotics, distribute narcotics, and collect and launder related proceeds. I am aware of the sophisticated tactics they routinely use to attempt to thwart any investigation of their organizations. I have authored numerous search warrants which have resulted in the seizure of controlled substances, items classified as unlawful drug paraphernalia, firearms and ammunition associated with illegal drugs, and other common evidence associated with illegal drugs. I have also assisted in the prosecution of known drug offenders, as a result of the aforementioned experience, training, and investigative techniques.

6. The facts in this affidavit come from your Affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Your Affiant makes this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled or operated by

Verizon Wireless, a wireless telephone service provider headquarters at 180 Washington Valley Road, Bedminster, New Jersey 07921.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that Jon Paul PALOMINO JARVIS has violated Title 21 U.S.C. §§ 846 and 841(a), conspiracy to distribute controlled substances. Jon Paul PALOMINO JARVIS was charged with these crimes on or about June 13, 2022, and is the subject of an arrest warrant issued on or about June 13, 2022. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Jon Paul PALOMINO JARVIS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

**PROBABLE CAUSE**

8. On June 26, 2025, members of the WCSO conducted a Buy/Walk utilizing a WCSO Confidential Source at 222 Sugar Hollow Road Jonesborough, TN, the residence of PALOMINO JARVIS. Confidential Source (hereinafter referred to as CS) was given $400 of WCSO OAF along with an audio/video recording device. The CS traveled to 222 Sugar Hollow Road Jonesborough, TN and met with Jon Paul PALOMINO JARVIS. The CS purchased approximately one (1) ounce of methamphetamine from PALOMINO JARVIS for $400. The CS then left the residence and met with WCSO Investigators at a pre-determined location where the CS turned over the purchased methamphetamine to Deputy Dalton Hinkel. A search was then conducted on the CS and the CS's vehicle to maintain case integrity.

9. On July 2, 2025, at approximately 2:00 pm, Drug Enforcement Administration (DEA) Johnson City Post of Duty (JCPOD) TFO Brian Vicchio and Investigator Dalton Hinkel,

met and debriefed WCSO Confidential Source regarding a subsequent meeting with Jon Paul PALOMINO JARVIS to purchase approximately two (2) ounces of suspected methamphetamine.

10. At approximately 5:50 pm, TFO Brian Vicchio provided the CS with $800 DEA Official Advanced Funds (OAF). At approximately 5:52 pm, TFO Brian Vicchio provided the CS with one (1) audio/video recording device. The purpose of providing the device was to record and monitor the person-to-person conversation between the CS and PALOMINO JARVIS.

11. At approximately 6:05 pm, TFO Vicchio and Inv. Hinkel observed the CS depart the predetermined neutral location. The CS then traveled to 222 Sugar Hollow Road Jonesborough, TN (the residence of PALOMINO JARVIS) and arrived there at approximately 6:10 pm. At approximately 6:12 pm, the CS was observed exiting his/her vehicle and walking inside and entering PALOMINO JARVIS's residence.

12. The CS was monitored by the audio/video device while inside of the residence. During the meeting, the CS was heard purchasing the methamphetamine and conversing with PALOMINO JARVIS. PALOMINO JARVIS was observed on the video handling several firearms. PALOMINO JARVIS discussed selling the firearms to the CS in the future. At approximately 6:41 pm, the CS was observed leaving PALOMINO JARVIS's residence. The CS was then directed by TFO Vicchio to meet at a pre-determined location whereupon the CS relinquished custody of the purchased 2 ounces of methamphetamine.

13. The CS stated that PALOMINO JARVIS changed the price of the methamphetamine to $900.00 which was also monitored via the audio/video device. Sgt. Tranbarger was able to obtain an additional $100.00 from WCSO OAF. The CS was given the additional

$100 by TFO Vicchio and Sgt. Tranbarger. At approximately 7:00 pm, the CS traveled back to 222 Sugar Hollow Road and met with PALOMINO JARVIS. The CS paid PALOMINO JARVIS $100 and discussed further purchases of methamphetamine.

14. At approximately 7:15 pm, the CS was observed leaving PALOMINO JARVIS's residence. The CS was directed by TFO Vicchio to meet at a pre-determined location whereupon the CS relinquished custody of one (1) audio/video recording device. Prior to departing, the CS and his/her vehicle were again searched by TFO Vicchio in order to maintain case integrity.

15. The following are screen shot pictures between the CS and the **target cellular telephone**, contact information that was saved for the **target cellular telephone** and with the picture of Jon PALOMINO JARVIS, and Cash App username data that is related to **target cellular telephone**.


4:42
95%
J.P
Hey my hommie will be back in town tomorrow evening and is needing 2 wonderful pocket pussy. If you don't care hold 2 back plz.
Gone lmao ill see bout restocking again cause it may be the last stock idk
Well shit my hommie was wanting to knock his socks off
I mean maybe I can share but may cost u lol how bad u wanna knock his socks off lmao
Super duper bad.
Plus he leaves a super awesome tip ya know..
y a But what bout my tip
I'll give you a big
I don't care to share the tip
Oh bullshit I said my tip not the tip
I'm a dorkette ya know!!!! I'm slow sometimes lol.
RCS message

8


4:43
95%
J.P
Super duper bad.
Plus he leaves a super awesome tip ya know..
y a But what bout my tip
I'll give you a big
I don't care to share the tip
Oh bullshit I said my tip not the tip
I'm a dorkette ya know!!!! I'm slow sometimes lol. But what's your tip???
Uh, exercising my right to remain silent I dont need anything held against me lmao
Sure you do it's called a somewhat warm kinda rubbery somewhat pretty female that can't talk back
He will be in no later then 4 if that's alright sweetheart
4:42 PM
RCS message


4:49
94%
J.P
I don't care to share the tip
Oh bullshit I said my tip not the tip
I'm a dorkette ya know!!!! I'm slow sometimes lol. But what's your tip???
Uh, exercising my right to remain silent I dont need anything held against me lmao
Sure you do it's called a somewhat warm kinda rubbery somewhat pretty female that can't talk back 😂
He will be in no later then 4 if that's alright sweetheart
Ouch that hurts somewhat pretty and cant talk back nooo maybe that wont talk we need to hash that out lol but idk what ill be able to help with but I can a little
Okay dork babe just let me know so I can let my hommie know that way he knows how much to get out of the atm.
4:49 PM
RCS message

16. Based on my training and experience, and my knowledge of this investigation, the following is a screen shot or images of the CS and the Target Cellular Telephone that occurred on July 2, 2025. The conversation was about purchasing two (2) ounces of methamphetamine as previously mentioned starting on paragraph 10.




17. Based on my training and experience, and my knowledge of this investigation, the CS provided a screen shot photo or image that shows the following details of the **target cellular telephone** and a picture of Jon Paul PALOMINO JARVIS that was saved under contact information for the CS cellular telephone.


5:03
90%
J.P
He will be in no later then 4 if that's alright sweetheart
Ouch that hurts somewhat pretty and cant talk back nooo maybe that wont talk we need to hash that out lol but idk what ill be able to help with but I can a little
Okay dork babe just let me know so I can let my hommie know that way he knows how much to get out of the atm.
Well depends on what we can work out la la la lmao jj
4:45 PM
Hey my hommie is back you good on 2 or what can you do
Let me know so I can tell him something that way he isn't just waiting around
Ugggghhhhhhh I need to make run but im waiting on funds I can prolly be persuaded to come off a qt maybe half but I dont know prolly take some good persuading or if I can get enough money to
4:57 PM
RCS message

18. Based on my training and experience, and my knowledge of this case, the following is a screen shot or image detailing the communication between the CS and **Target Cellular Telephone** that occurred on July 23, 2025. The conversation was about the purchase of another two (2) ounces of methamphetamine.


12:21
4236128543
Results
Jp Jarvis
$Jarvistag14
English (US)

19. Based on my training and experience, and my knowledge of this investigation, this is a screen shot or image that shows the **target cellular telephone** and the current Cash App data showing the service provider of JP JARVIS aka Jon Paul PALOMINO JARVIS.

20. Based on my training and experience, your Affiant has learned that Verizon Wireless is a company that provides cellular telephone access to the general public. Your Affiant also knows that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often half a mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

22. Based on my training and experience, your Affiant knows that Verizon Wireless can collect E-911 Phase II data about the location of the **Target Cellular Telephone** by initiating a signal to determine the location of the **Target Cellular Telephone** on the

Verizon Wireless network or with such other reference points as may be reasonably available.

23. Based on my training and experience, your Affiant knows that Verizon Wireless can collect cell-site data about the **Target Cellular Telephone**.

## AUTHORIZATION REQUEST

24. Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. Your Affiant further requests, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Telephone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. Your Affiant further requests that the Court direct Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921 to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Verizon Wireless. Your Affiant also requests that the Court direct Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cellular Telephone** on the Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

27. Your Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Telephone** outside of daytime hours.

28. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Brian Vicchio, Task Force Officer
Drug Enforcement Administration

Sworn and subscribed to by telephone on July 25, 2025

Cynthia Richardson Wyrick
United States Magistrate Judge

## ATTACHMENT A

**Property to be searched**

1. The cellular telephone assigned call number **(423) 612-8543** (the "**Target Cellular Telephone**"), whose wireless service provider is Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, New Jersey 07921.

2. Information about the location of the **Target Cellular Telephone** that is within the possession, custody, or control of Verizon Wireless.

## ATTACHMENT B

### I. Information to be Disclosed by the Provider

All information about the location of the **Target Cellular Telephone** is described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cellular Telephone**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the Location Information to the government. In addition, Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon Wireless services, including by initiating a signal to determine the location of the **Target Cellular Telephone** on Verizon Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841 and 846 involving Jon Paul PALOMINO JARVIS.